PATRICK J. WHALEN, ESQ.
ATTORNEY AT LAW, LLC
109 S. Warren Street
P.O. Box 23653
Trenton, New Jersey 08608
Phone: 609.393.6970
Fax: 609.393.6971
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TINA D'AMBOLA, | : CASE NO.: |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **COMPLAINT AND JURY DEMAND** |
| THE MARINA AT BEACON, LLC d/b/a | : |
| BEACON 70; VINCENT COSTA; JOHN & | : |
| JANE DOES (1-10); and XYZ CORPS | : |
| (1-10), | : |
| | : |
| Defendants. | : |

The Plaintiff, Tina D'Ambola, through her attorney, Patrick J. Whalen, Esquire, by way of Complaint against the Defendants, The Marina at Beacon, LLC d/b/a Beacon 70 (hereinafter referred to as "Beacon 70"), and Vincent Costa,  John/Jane Does (1-10) and XYZ Corps (1-10) states the following:

## I.     NATURE OF THE CLAIMS

1.      This civil action arises out of Plaintiff being wrongfully terminated as a result of her (a) gender and/or as a result of a sexually hostile work environment; (b) her disability and medical conditions; (c) as a result of her pursuing her First Amendment right of access to the courts, specifically, as a result of her seeking and obtaining a restraining Order in a Domestic Violence matter against her boyfriend, who was also employed at Defendant Beacon 70, and was

friendly with and/or in a business/financial relationship with Defendant Beacon 70's owners; (d) in retaliation after she disclosed, complained about and/or objected to unlawful and unethical work practices, and/or unlawful/discriminatory conduct of the Defendants, and the Defendants' employee responsible for the domestic violence; and/or (e) other improper reasons.

Plaintiff asserts violations of the New Jersey Conscientious Employee Protection Act, violation of her First Amendment rights, violations of the New Jersey Law Against Discrimination, and other constitutional, statutory, and common law claims. Specifically, Plaintiff contends that she was discriminated against as a result of her gender and/or disabilities, of which Defendants were aware.

This lawsuit is also brought, in part, to address the inequity and inherent inconsistency in firing an employee who was the victim of domestic violence but retaining the alleged male harasser as an employee simultaneously.

## II. JURISDICTION

2.      Jurisdiction over Plaintiff's claims is conferred on this Court based on her First Amendment claims pursuant to 42 U.S. §1983 and 28 U.S.C. §1343(a).   The matter in controversy exceeds $75,000.00.

## III. VENUE

3.      Venue is proper within the New Jersey District Court pursuant to 28 U.S.C. 1391(c)(1) based on the fact that Plaintiff's former employer, Defendant Beacon 70, is located in that judicial district, and because the misconduct and acts of discrimination and retaliation occurred within this judicial district.

## IV.  PARTIES

4.      Plaintiff, Tina D'Ambola, is an adult female who resides in Brick, New Jersey. Until her wrongful termination, Plaintiff was employed by Defendant Beacon 70.

5.      Defendant, Beacon 70, is an entity existing under the laws of the State of New Jersey, and conducts business at 799 Route 70, Brick, New Jersey 08723.  Defendant Beacon 70 was/is an "employer" within the meaning of N.J.S.A. §10:5-1.

6.      Defendant Vincent Costa is the Manager of Defendant Beacon 70 and the former direct Supervisor of Plaintiff Tina D'Ambola.  Defendant Vincent Costa had supervisory or management responsibilities directly pertaining to the Plaintiff and/or otherwise was involved in her wrongful termination.

7.      Defendants John and Jane Does (1-10) ("John Does") are presently unidentified individuals that were involved in the wrongful, retaliatory and/or discriminatory conduct, as well as the adverse employment acts, at issue in this Complaint.  Plaintiff reserves the right to amend the Complaint to include these individuals should their identities be revealed in discovery.

8.      Defendants XYZ Corps. (1-10) ("XYZ") are presently unidentified business entities or public agencies that interfered with Plaintiff's employment with Defendant and/or otherwise were involved in the retaliatory and/or discriminatory conduct and adverse employment acts directed at Plaintiff and/or at issue in this action.  Plaintiff reserves the right to amend the Complaint to include these parties should their identities be revealed in discovery.

9.     At all times relevant to this Complaint, Defendants John/Jane Does acted under the color of their position and in their capacity as Plaintiff's Supervisor as decision-makers and policymakers for Defendant Beacon 70, and, within the apparent scope of said authority, individually aided, abetted, incited, compelled and/or coerced the performance of the herein referenced misconduct, including the unlawful practices prohibited by CEPA.

10.     Accordingly, Defendants John/Jane Does and/or XYZ Corps. (1-10) and all other unnamed employees of the Defendant employer are individually responsible for their actions in violation of both CEPA and LAD, and the Defendant employer is vicariously responsible for the actions of these individually named Defendants and all their employees and the damages sustained by Plaintiff as a result thereof.

11.     At all times relevant to this Complaint, Defendants John & Jane Does, other employees, agents and/or representatives of the Defendant employer, were members of upper management, acted under the color of their positions in their capacity as Plaintiff's direct and indirect Supervisors and within the apparent scope of that authority.   These individual Defendants and other members of upper management of Defendant Beacon 70 engaged in actual participation and/or willful indifference regarding the retaliatory, hostile and/or discriminatory treatment of and wrongful termination of the Plaintiff.

12.     Upon information and belief, at all times relevant to this Complaint, Defendants John/Jane Does (1-10) were involved in and/or played a direct and/or meaningful role in Plaintiff's wrongful termination, in the retaliation against her, in the discrimination towards her, the failure to accommodate her, and/or in the adverse employment acts taken against her described herein.

## II.  PERTINENT BACKGROUND FACTS.

### A.  Plaintiff's Background.

13.  Plaintiff Tina D'Ambola is 43 years old and, upon being hired, had been working in the restaurant industry for many years.

14.  Plaintiff was hired by Defendant Beacon 70 back in September 2017 when the restaurant first opened.  She worked there as a Server, throughout her entire employment, until her wrongful termination.

15.  Some of Plaintiff's job responsibilities included, but were not limited to, the following:

    a.  Waiting on/Serving guests;
    b.  Bartending;
    c.  Setting up the Bar;
    d.  Setting up tables;
    e.  Sweeping; and
    f.  Cleaning.

16.  Plaintiff was disciplined one time while employed at Beacon 70 for ordering food during her shift without Manager approval.  Other than that one very minor incident, Plaintiff was never disciplined.

17.  Plaintiff was a diligent and conscientious employee – who worked 45+ hours per week and did not call out sick.

18.  Plaintiff was praised for the quality of her work and her treatment of the customers.

19.  Plaintiff would receive several compliments from guests/customers on a nightly basis.  Plaintiff had high sales and would receive generous tips.

20.  Plaintiff also established positive working relationships with the customers, her co-workers, and her Supervisors.

5

**B.**     **Plaintiff and Her then-Boyfriend Both Work At Defendant Beacon 70.**

21.     Notably, Plaintiff's former boyfriend, Ed Montalvo, worked at Defendant Beacon 70 as well.  Ed Montalvo's title and position was "Dockmaster" - - he was and remain the Manager of the Defendant's Marina.

22.     In 2018, Plaintiff and Mr. Montalvo were looking to purchase a house together.

23.     In or around the Fall of 2018, Defendant Beacon 70's co-owner, Rajesh Dheri loaned Mr. Montalvo $10,000.00 so that Plaintiff and Mr. Montalvo could purchase that house. Mr. Dheri had the money directly deposited into their joint bank account.   (Mr. Dheri passed away on May 21, 2021.)

24.     Very soon after Mr. Dheri loaned that $10,000.00, Mr. Dheri began hitting on Plaintiff Tina D'Ambola at work and at various work events.

25.     Indeed, on one occasion, Mr. Dheri kissed Plaintiff in front of Mr. Montalvo at a restaurant, *46 Lounge*, that, upon information and belief, was also owned by Rajesh Dheri.

26.     This incident would haunt Plaintiff - - ultimately leading to her wrongful termination.

27.     Plaintiff did not welcome Mr. Dheri's advances.

28.     Mr. Dheri even tried to get Plaintiff to go to Florida with him, but Plaintiff refused.

29.     Mr. Dheri continuously hit on and flirted with Plaintiff throughout 2019.

30.     Plaintiff did not tell anybody else about these incidents because Mr. Dheri was an owner of Defendant Beacon 70, and, ironically, Plaintiff did not want to lose her job.

31.     Mr. Dheri's inappropriate romantic advances toward the Plaintiff instigated and initiated a jealousy campaign for Plaintiff's then-boyfriend, Ed Montalvo.

32.     Mr. Montalvo was extremely angry and jealous about Mr. Dheri's flirting with his then-girlfriend (Plaintiff) and would continuously (indeed, until the end of their relationship) falsely accuse Tina D'Ambola of cheating on him and having an affair with Mr. Dheri.

33.     Eventually, Mr. Montalvo's jealousy and anger got to the point that Rajesh Dheri himself was afraid (in his own words, "terrified") of Mr. Montalvo.

34.     Mr. Montalvo even went as far as telling Plaintiff's family members, including Plaintiff's parents, her siblings, and her own sons, that she was cheating on him with her boss, Defendant's owner, Rajesh Dheri.

35.     Indeed, Mr. Dheri's inappropriate and overt flirting with Plaintiff directly and substantively caused problems in Plaintiff's relationship with Mr. Montalvo, which eventually led to and culminated in Domestic Violence (See Section E below).  This inappropriate conduct ultimately contributed to and directly led to Plaintiff being wrongfully terminated.

## C.  Plaintiff Injures Her Back in June 2020.

36.     Due to the COVID-19 Pandemic, the restaurant closed in March 2020.

37.     Notably, Plaintiff was one of the initial employees re-hired back after the Pandemic closure.  Specifically, she was returned to work on June 15, 2020 to help prepare the restaurant's reopening.

38.     On June 15, 2020, Plaintiff did return to work at Defendant Beacon 70 to help with the reopening.

39.     On that same day, Ms. D'Ambola injured her back while preparing the outdoor seating area and carrying buckets of sand that were used to hold down the table umbrellas.

40.     Plaintiff treated for her back injuries with a Chiropractor for 6 weeks and then received extensive physical therapy.

41.     Plaintiff actually treated with one of Defendant Beacon 70's owners, Dr. Karl Blum, throughout 2020, up to and including the point of her wrongful termination.

### D. Plaintiff's Cancer Condition and Related Treatment in 2020.

42.     In 1994, Plaintiff was diagnosed with Hodgkin's Disease.  Plaintiff had a biopsy surgery and a subsequent surgery to put in a port. Plaintiff endured six months of chemotherapy and two weeks of radiation.

43.     In 2013, Plaintiff was diagnosed with Breast Cancer and underwent 2 surgeries and chemotherapy for 3 months.

44.     While dealing with and treating for her back injury, throughout July 2020 through October 2020, Plaintiff was also evaluated by and treated with several Physicians regarding her cancer.

45.     Due to the COVID 19 Pandemic, as well as the numerous postponements of the Domestic Violence court proceedings mentioned in the next (Section E below), Plaintiff had to postpone and delay a number of treatments related to this cancer.

46.     In late 2020, Plaintiff was required to undergo two more surgeries related to her Breast Cancer.

47.     In November 2020, Plaintiff was then diagnosed with Cervical Cancer and was told she needed surgery.

48.     Plaintiff had two surgeries scheduled for her cancer - - one for November 19, 2020 for the Breast Cancer, and another in December 16, 2020 for the Cervical Cancer.

49.     On November 15, 2020, Plaintiff spoke directly with Defendant Vincent Costa, Beacon 70's Manager, and advised him of both of these scheduled surgeries.

50.     Simultaneously, she also advised Defendant Costa about the recent Domestic Violence incident. (See Section E below.)

51.     Plaintiff specifically advised Defendant Costa that, after those two surgeries, she would be able to return to work by mid-January once she was fully recovered.

52.     Defendant Costa expressly reassured her of her job security and advised Plaintiff "not to worry about it" and to "take care of herself".

53.     These promises and representations would quickly prove to be false.

54.     Significantly, Defendant Beacon 70 was aware, throughout her employment, and certainly prior to her termination, of Plaintiff's medical situation - - i.e., her existing disabilities. This includes her pre-existing cancer condition, a new cancer diagnosis, as well as a serious low back injury she sustained in June 2020, while working at Defendant Beacon 70 and helping with the reopening of same.

55.     Again, as noted above, much of her direct treatment for the back injury was with the co-owner of Defendant Beacon 70, Dr. Blum.

**E.     Plaintiff Files a Domestic Violence Complaint Against Ed Montalvo.**

56.     As noted above, as a direct result of Beacon's Owner, Rajesh Dheri's flirting and inappropriate interaction with Plaintiff, the relationship between Plaintiff and co-worker/then-boyfriend, Ed Montalvo, became very contentious.

57.     In less than a week before her scheduled surgery, on or about November 14, 2020, Plaintiff was the victim of harassment and assault by her former live-in boyfriend/co-worker, Ed Montalvo.  (The Court ultimately ruled in her favor as to that application, granting her a Temporary Restraining Order.)

58. Plaintiff was terminated from Defendant Beacon 70 as a direct result of her filing this application for a Domestic Violence Restraining Order against co-worker/boyfriend Mr. Montalvo.

59. The matter was filed as a Domestic Violence action in Family Court in Ocean County, Superior Court of New Jersey. It is referenced by Docket #FV-15-7700-21.

60. The Court entered a Temporary Restraining Order in her favor.

61. Further, upon information and belief, although a Final Restraining Order was not entered, that Court did rule in Plaintiff's favor concluding that harassment had in fact occurred.

62. As described above, Plaintiff expressly disclosed and informed Defendant Beacon 70 of these events and her Domestic Violence Court action on November 15, 2020.

63. Plaintiff expressly reported and disclosed that their employee in charge of the Marina (Ed Montalvo) had engaged in this Domestic Violence (harassment) against her.

64. Indeed, Plaintiff showed the photographs of the bruises she sustained from Mr. Montalvo to Beacon's owners, Dr. Blum and Rajesh Dheri.

65. Mr. Costa told Plaintiff to take care of what she needed to and that they would worry about the Restraining Order after her surgeries and when she was ready to return to work.

66. This reassurance would also prove to be false.

67. Despite the fact that she was the victim and that she required Police and Court assistance and protection, Defendant Beacon 70 chose to fire her shortly after she disclosed that information to Defendant Vincent Costa.

68. Notably, Defendant Beacon 70 did not suspend nor terminate the male employee (Mr. Montalvo), who was the actual perpetrator of the harassment and domestic violence.

69.     Incredibly, Defendant Vincent Costa appeared and testified on behalf of Ed Montalvo at the FRO Hearing in or around June 2021.

70.     At a bare minimum, Defendant Beacon 70 and Defendant Costa could and should have taken steps to ensure that the two involved employees had zero contact and that neither employee lost their job.

71.     Upon information and belief, such an accommodation was easily and readily available.

72.     Instead, inexplicably, Defendants chose to wrongfully terminate Tina D'Ambola - - who had done absolutely nothing wrong except engage in and exercise her rights under the law as a victim of Domestic Violence.

73.     Plaintiff was fired, in direct and substantial part, for asserting and exercising her legal rights, including her right of access to the Courts and her First Amendment rights.

74.     Defendants were aware of this protected activity when they chose to terminate her employment.

75.     Plaintiff's wrongful termination and the retaliation against her implicates and constitutes a violation of the NJLAD.

76.     Plaintiff, a female employee, was the victim of domestic violence and harassment by a male employee.

77.     Defendants chose to terminate Plaintiff, the female employee, who was the victim of domestic violence and sexual harassment and chose to keep the male employee who perpetrated the domestic violence.

### F.    Plaintiff is Wrongfully Terminated.

78.    Very shortly after reporting and disclosing both (a) the domestic violence incident involving another employee; and (b) her upcoming cancer surgeries, Defendants took steps to retaliate against her and then to wrongfully terminate her.

79.    Beacon 70 had a "work app" which the employees were to use to obtain their work schedule every week. The work app was a messaging application that included the entire Beacon 70 staff, including Owners, Managers and Employees.   It involved anything and everything to do with the restaurant, including, but not limited to, scheduling, schedule changes, food and drink specials, and upcoming events.

80.    On or about December 7, 2020, Plaintiff discovered that she had been deleted from the Beacon 70 "work app".

81.    Plaintiff assumed this was just a glitch with the work app.

82.    On or about December 14, 2020, Plaintiff wrote to Defendant Costa, via text message, and advised him that (a) her recent MRI was good; (b) she was undergoing a biopsy on December 16, 2020; (c) the Domestic Violence court date was scheduled for January 6, 2021; and (d) she wanted to return to work as soon as she was done healing, as had been previously agreed to and understood.

83.    Plaintiff also asked Defendant Costa why she had been deleted from the work app.

84.    The next day, on December 15, 2020, Defendant Costa responded to that text message and advised her that there were "*no shifts available*" and ended his communication saying: "*Good luck with everything*" and "*be safe*".

85.    Plaintiff immediately asked Defendant Costa if she was still employed.

86.     Plaintiff also stated in her communication to Defendant Costa that she did not think her job would be in jeopardy due to her health.

87.     Plaintiff reminded Defendant Costa that when they spoke on November 15, 2020, he assured her that she could return to work after her medical issues were resolved.

88.     Plaintiff also asked Defendant Costa to let her know when shifts did become available in the month ahead.

89.     Plaintiff never heard back from Defendant Costa as to any available shifts.

90.     By mid-January 2021, Plaintiff had been fully cleared to return to work by her surgeons and treating physicians.

91.     In January 2021, Dr. Karl Blum, the other co-owner of Defendant Beacon 70, assured Plaintiff that he believed the business was slow right at that point, and that he was sure Defendant Costa would be calling her to return in April 2021 when business picked up.

92.     No phone call from Defendant Costa, nor from anyone on behalf of Defendant Beacon 70, ever came.

93.     Clearly, Plaintiff has been wrongfully terminated.

94.     Upon information and belief, since the Spring 2021 of and ongoing, Defendants have been actively recruiting and hiring new employees for the restaurant.

95.     However, inexplicably, they have refused to allow or consider Plaintiff's return.

96.     As mentioned above, Mr. Montalvo had previously borrowed a significant amount of money ($10,000.00) from Beacon's co-owner, Rajesh Dheri.

97.     Upon information and belief, Defendant Beacon 70 eventually started deducting a portion of Mr. Montalvo's paycheck (bi-weekly) to pay back on the "loan" from Mr. Dheri.

98.     Upon further information and belief, Defendant Beacon 70 chose to terminate the female, domestic violence victim over the male co-worker who owed them money and who managed their Marina.

**G.     Defendants Retaliated Against The Plaintiff As a Direct Result Of Her "Protected Activity".**

99.     In addition to gender and disability discrimination, Plaintiff engaged in "protected activity", under CEPA, NJLAD, and the First Amendment, which directly led to her wrongful termination.

100.     Plaintiff was deliberately retaliated against because she identified, disclosed, and raised concerns regarding certain illegal and unethical activities and practices by the Defendants, as well as to a certain employee of the Defendants.  The following are just some limited examples of her "protected activity":

a.     Plaintiff disclosed and objected to Defendants removing her from the "work app" and not providing her shifts as a result of her medical condition and leave related to same;

b.     Plaintiff disclosed and objected to Defendants removing her from the "work app" and not providing her shifts as a result of her pursuing a Domestic Violence action against the Beacon 70 employee who managed the Marina, who also happened to be friends with Defendants' owners and/or in a separate business relationship with them; and

c.     Plaintiff reported, disclosed, and complained to Defendants Management about the harassment and domestic violence she had experienced at the hands of another Beacon 70 employee, who managed their Marina, and whom had a close relationship with certain owners and Supervisory staff.

101.     Plaintiff disclosed and complained about the above unethical and unlawful practices.

102.     Plaintiff was terminated as a result of Defendants' discrimination, retaliation, and violations of public policy.

### H.   Laws, Regulations, Policies and Directives Which Plaintiff Reasonably Believed Defendants Were Violating.  Plaintiff's Disclosure of and Objections Concerning Those Violations Resulted In a Series of Adverse Employment Actions, Including Her Wrongful Termination.

103.   New Jersey enacted the New Jersey Security and Financial Empowerment Act (the "SAFE Act") to provide qualifying employees up to twenty (20) days of unpaid leave from work.

104.   Plaintiff objected to and disclosed what she reasonably believed were violations of important State laws, policies, regulations, and ethical considerations concerning (a) the disabled; (b) gender discrimination; and (c) Domestic Violence and the rights of women in the face of same.  Some of those pertinent laws, regulations, ethics codes and public policies include the SAFE Act.

105.   The SAFE Act applies to both public and private employers who employ 25 or more employees.

106.   In order to qualify for the job protections provided under the SAFE Act, an employee must have worked at least 1,000 hours in the preceding 12 months. The employee must be a victim of domestic violence as defined by N.J.S.A. 2C:-25-19.

107.   In New Jersey, an employer may not discharge or discriminate or retaliate against an employee who is a victim of domestic violence for taking time off to obtain or attempt to obtain a restraining order or any other judicial relief to help ensure his or her health, safety, or welfare.

108.   The SAFE Act has an anti-retaliation provision which makes it illegal to take or threaten to take reprisals such as discharging, harassing, discriminating or retaliating against an employee in connection with the compensation, terms, conditions or privileges of employment because the employee took or requested any leave that the employee was entitled to under the SAFE Act.

## COUNT I
## NEW JERSEY LAW AGAINST DISCRIMINATION
**(Violations of New Jersey Law Against Discrimination: Disability Discrimination, Gender Discrimination, and/or Hostile Work Environment)**

109.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

110.    The New Jersey Law Against Discrimination, N.J.S.A.§10:5-1, *et seq.* ("NJLAD"), specifically provides that it is an unlawful employment practice to discriminate against an employee because of his or her disability.

111.    The NJLAD also specifically provides that, when an employee requests an accommodation due to a disability, the employer must engage in a good faith interactive process with the employee to determine whether reasonable accommodations can be made.

112.    Defendants discriminated against Plaintiff on the basis of her disability by firing her while she was obtaining reasonable and necessary medical treatment for serious illnesses and medical conditions.

113.    Again, she was actually treating with one of Defendants' co-owners during the pertinent time period - - for an injury that occurred at the job.

114.    Defendants discriminated against her by denying her requests to return once she had clearance from her surgeons and treating physicians.

115.    Simultaneously, while refusing to employ Plaintiff or give her any new shifts, the Beacon Defendants were actively recruiting new employees and engaged in a social media hiring campaign.

116.    As set forth above, Plaintiff was subjected to discrimination based on her gender and was subjected to a hostile work environment.

117.   Defendants' conduct, as set forth above, was willful, malicious, extreme, and outrageous, entitling Plaintiff to punitive damages.

118.   As a direct and proximate result of Defendants' misconduct, including their violation of the NJLAD, Plaintiff has suffered significant economic loss; a severe and detrimental impact on her and her family's quality of life; physical and emotional stress; pain and suffering; severe emotional distress; psychological damage; embarrassment; and adverse effects on her daily, personal and social life.

### COUNT II
### VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION
### RETALIATION

119.   Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

120.   The NJLAD specifically provides that it is an unlawful employment practice to take reprisals against any person that has disclosed and/or opposed practices, conduct or acts outlawed by the NJLAD.

121.   Defendants engaged in retaliation against Plaintiff in violation of NJLAD.

122.   Plaintiff disclosed and objected to what she reasonably believed was (a) Defendants' Disability and Gender Discrimination and/or (b) Mr. Montalvo's discriminatory actions, words, and conduct constituting harassment. Plaintiff brought her complaints and concerns directly to Defendant Beacon 70's owners, Dr. Blum, Mr. Dheri, and Manager Vincent Costa.

123.   Plaintiff was retaliated against because she was forced to obtain a Domestic Violence Restraining Order as a result of the inappropriate and unlawful actions of her co-

worker/boyfriend Ed Montalvo and because she asserted and exercised her right of access to the Courts.

124.    Plaintiff's good faith disclosures and objections to Defendants resulted in the direct and causally related retaliation set forth herein that caused severe emotional pain, suffering, mental trauma, physical pain and suffering, humiliation, and anxiety in express violation of the NJLAD, N.J.S.A. 10:5-12, *et. seq.*, by retaliating against Plaintiff for disclosing and objecting to practices and/or acts prohibited by the NJLAD as set forth herein.

125.    At all times relevant to this Complaint, Defendant Beacon's owners and manager acted under the color of their position in the capacity as Plaintiff's direct and indirect Supervisors and within the apparent scope of that authority.

126.    The outrageous and egregious acts of retaliation and wrong termination were willful, intentional, wanton, outrageous, reckless, malicious and were made with the intent to injure Plaintiff.  Defendants should also be held liable for punitive damages.

127.    Defendants' retaliatory actions and reprisals are a direct and causal result of Plaintiff's exercise of her legally protected rights in opposition to practices or acts outlawed by the NJLAD and are in clear violation of the NJLAD.

128.    The retaliatory acts committed by Defendants were willful, intentional, wanton, evil-minded, outrageous, reckless, and malicious and were made with the intent to injure Plaintiff.  As a result, Plaintiff is entitled to punitive damages.

129.    As a direct and causal result of this retaliatory conduct, Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, emotional distress, trauma and anxiety and other irreparable harm, pain, and suffering.

**COUNT III**
**VIOLATION OF FIRST AMENDMENT 42 U.S.C. §1983**
**(Interference and Retaliation)**

130.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

131.    Under 42 U. S. C. §1983, Defendants violated the First Amendment by taking adverse actions against Plaintiff in retaliation for her exercising her right of access to the courts, specifically her filing and pursuing a Domestic Violence action against a co-employee, indeed, against the employee who managed the Defendants' Marina, and by reporting, disclosing and objecting to the acts of Domestic Violence and harassment against her, and what she reasonably believed were violations of certain important State laws, policies, regulations, and ethical considerations as set forth above.

132.    Those adverse actions, described more fully above, include, but are not limited to, termination of Plaintiff's employment.

133.    Under 42 U. S. C. §1983, Defendants also violated the First Amendment by taking adverse actions against Plaintiff in retaliation for her attempting to pursue and exercise her legal rights under both State and Federal law, as well as the State and U.S. Constitution.

134.    The illegal and unconstitutional acts of Defendants constituted acts and a custom and/or policy to interfere with Plaintiff's First Amendment rights in violation of her protected constitutional rights under both the United States and the New Jersey State Constitution, including, but not limited to Article I, §6 (Freedom of Speech).

(a)    Defendants, under color of state law, deprived Plaintiff of her rights, privileges and immunities secured by the Constitution of the United States by, among other things, retaliating against the Plaintiff because of her First Amendment activities.

19

135.    Defendants interfered with or attempted to interfere with Plaintiff's exercise or enjoyment of the substantive rights, privileges and immunities secured by the Constitution of the United States by way of intimidation and retaliation.

136.    Plaintiff's First Amendment rights have been generally, and without justification, violated by Defendants.

137.    As a result of the Defendants' interference, intimidation, retaliation, and unconstitutional conduct, Plaintiff has been damaged.

138.    As a proximate result of the aforementioned acts, including violation of her civil rights, Plaintiff has been damaged, and has suffered mental distress and anguish and other proximately caused damages. Plaintiff has suffered the following injuries and damages:

(i)      loss of income, back pay and front pay;
(ii)     loss of benefits;
(iii)    loss of professional and personal reputation; and
(iv)     severe and continuing emotional distress.

## COUNT IV
## VIOLATION OF NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA").

139.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

140.    As described more fully above, Plaintiff reported and disclosed various unlawful and/or unethical work practices to management that she reasonably believed were in violation of a law, policy, rule, or regulation.

141.    As described more fully above, Plaintiff objected to management about unlawful and/or unethical work practices that she reasonably believed were in violation of a law, policy, rule, or regulation.

142.   Specifically, Plaintiff disclosed and objected to (a) disability discrimination; (b) gender discrimination; and (c) Domestic Violence by a co-worker.

143.   The unlawful termination of Plaintiff, the other adverse employment acts, described above, as well as the retaliation in general was directed at Plaintiff because she disclosed and/or objected to unlawful and/or unethical work practices of the employer that were believed to be in violation of a law, policy, rule or regulation.

144.   Plaintiff's disclosures and objections to the unlawful conduct outlined above ultimately led to her wrongful termination.

145.   By retaliating against, taking adverse action against, and ultimately terminating Plaintiff, because she disclosed to Defendants management practices and workplace conditions that she reasonably believed were in violation of a law, policy, rule, or regulation, Defendants have violated the Conscientious Employment Protection Act, N.J.S.A. §34:19-1, *et seq.*

146.   By retaliating against, taking adverse action against, and ultimately terminating Plaintiff because she objected to activities, policies or practices, and workplace conditions which she reasonably believed were in violation of a law, policy, rule, or regulation, Defendants have violated the Conscientious Employee Protection Act, N.J.S.A. §34-19-1, *et seq.*

147.   As a direct and causal result of this conduct, Plaintiff has suffered a substantial loss of income and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, severe emotional distress, trauma and anxiety and other damages.

## COUNT V
## (WRONGFUL DISCHARGE IN VIOLATION OF COMPANY POLICIES)

148.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

149.    On information and belief, Defendants' policies required them to (a) not discriminate against or retaliate against a disabled employee, especially an employee who was injured at work/on the job; (b) not engage in gender discrimination; and (c) not retaliate against a female employee who files a Domestic Violence Complaint against another employee, as well as other provisions.

150.    Defendants were well aware of and on notice of Plaintiff's medical conditions and the surgical procedures she was required to undergo.

151.     Defendants terminated Plaintiff's employment in direct violation of Defendant's policies and those of the State of New Jersey.

152.    As a direct and proximate result of Defendants' wrongful discharge in violation of company policies, Plaintiff has suffered significant economic loss; physical and emotional stress; pain and suffering; severe emotional distress; psychological damage; embarrassment; and adverse effects on her daily, personal, and social life.

## COUNT VI
## TERMINATION IN VIOLATION OF PUBLIC POLICY

153.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

154.    Plaintiff was wrongfully terminated by Defendants.

155.    As set forth above, under the factual circumstances, Defendants' termination of Plaintiff was a direct violation of clear mandated public policies within this State.

156.     Several of those public policies are set forth and described above.

157.     These include the significant public policy of eradicating, preventing and punishing Domestic Violence, as well as State public policy of protecting victims of Domestic Violence from being re-victimized.

158.     As a result of having been discharged by Defendants, Plaintiff has suffered significant economic loss and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, severe emotional distress, trauma and anxiety and other damage.

## COUNT VII
## (VIOLATION OF FEDERAL FAMILY AND MEDICAL LEAVE ACT)

159.     Plaintiff repeats and realleges the allegations set forth above.

160.     Plaintiff was an "eligible employee" under the Federal Family and Medical Leave Act, 29 U.S.C. Section 2601(2).  Plaintiff was employed by Defendant for at least 12 months and worked at least 1,250 hours in the 12 months preceding the time when she would have been eligible for leave.

161.     Defendants were an "employer" under the federal Family and Medical Leave Act, 29 U.S.C. Section 2601 (4) and employed fifty or more employees for each working day of twenty or more calendar workweeks in the current or preceding calendar year.

162.     Plaintiff had a serious health condition as defined by the Family and Medical Leave Act.

163.     Defendant terminated Plaintiff because she took leave that she was eligible for under the FMLA and they did not restore her to the same or an equivalent position after returning from medical leave.  Defendant therefore interfered with and retaliated against Plaintiff

23

and willfully violated her rights under the federal Family and Medical Leave Act, 29 U.S.C. Section 2601 *et seq.*

**WHEREFORE**, Plaintiff seeks judgment against Defendants for back pay and other lost compensation plus interest, liquidated damages at the rate of double the sum of damages plus interest, attorney's fees and court costs and other fees as well as such relief as the Court may deem just and appropriate under the circumstances.

<u>**COUNT VIII**</u>
<u>**(BREACH OF EXPRESS AND IMPLIED EMPLOYMENT CONTRACT)**</u>

164.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

165.    Upon information and belief, through the existence of certain policies, procedures, and practices, as well as through direct promises and representations through the parties' prior course of dealing, certain express and implied contractual obligations and duties existed between Plaintiff and Defendants.

166.    These contractual obligations and duties arose as a result of Defendants' policies and practices, Defendants' specific and express promises and representations, as well as obligations and duties imposed on Defendants as a result of the public policies of the State of New Jersey.

167.    Defendants breached their express, implied, and/or quasi-contractual obligations owed to Plaintiff, as described above, by terminating her employment.

168.    As a direct and proximate result of Defendants' breach of Plaintiff's express and implied employment contract, Plaintiff has suffered significant economic loss, as well as other damages.

## COUNT IX
## BREACH OF GOOD FAITH AND FAIR DEALING

169.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

170.    As with every contract, there was an implied covenant that Defendants and Plaintiff would deal with each other fairly and in good faith.

171.    Defendants owed a duty of good faith and fair dealing to Plaintiff, as a result of that contractual relationship.

172.    Defendants' duty of good faith and fair dealing applies to implementation and enforcement of its existing policies and practices related to discrimination, the treatment of employees with disabilities, as well as the treatment of employees who have been the victim of Domestic Violence.

173.    As described above, Defendants breached this covenant and did not act in good faith nor engage in fair dealing with the Plaintiff.

174.    As a result of Defendants' breach of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages to her loss and detriment.

## COUNT X
## VIOLATION OF NEW JERSEY DOMESTIC VIOLENCE LAWS
## AND THE NEW JERSEY SAFE ACT

175.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

176.    New Jersey enacted the New Jersey Security and Financial Empowerment Act (the "SAFE Act") to protect victims of Domestic Violence from being retaliated against by an employer.

177.    Plaintiff qualifies for the job protections provided under the SAFE Act, as she worked at least 1,000 hours in the preceding 12 months and was a victim of domestic violence as defined by N.J.S.A. 2C:-25-19.

178.    In New Jersey, an employer may not discharge or discriminate or retaliate against an employee who is a victim of domestic violence for taking time off to obtain or attempt to obtain a restraining order or any other judicial relief to help ensure his or her health, safety, or welfare.

179.    The SAFE Act has an anti-retaliation provision which makes it illegal to take or threaten to take reprisals such as discharging, harassing, discriminating or retaliating against an employee in connection with the compensation, terms, conditions or privileges of employment because the employee took or requested any leave that the employee was entitled to under the SAFE Act.

180.    As noted above, Plaintiff advised Defendant Costa of the Domestic Violence incident involving her co-worker, Beacon employee Ed Montalvo and that she would be needed in Court on January 6, 2021 for the Domestic Violence Complaint.

181.    Defendants violated the NJ SAFE Act and terminated Plaintiff in retaliation for her seeking relief for the Domestic Violence perpetrated upon her by Defendant's employee Mr. Montalvo.

182.    Further, the New Jersey Domestic Violence laws explicitly and implicitly imply a private cause of action to prohibit and preclude an employer from retaliating against and/or terminating an employee because that employee is pursuing his/her rights under those laws to seek protection as a Domestic Violence victim.

183.    As a result of the Defendants' retaliation and wrongful discharge of Plaintiff,

Plaintiff has been damaged.

184.    As a proximate result of the aforementioned acts, including violations of New Jersey Domestic Violence laws and of the New Jersey SAFE Act, Plaintiff has been damaged, and has suffered mental distress and anguish and other proximately caused damages. Plaintiff has suffered the following injuries and damages:

a)    loss of income, back pay and front pay;
b)    loss of benefits;
c)    loss of professional and personal reputation; and
d)    severe and continuing emotional distress.

**WHEREFORE**, the Plaintiff asks this Court to:

a.    Enter judgment in favor of the Plaintiff and against the Defendants for damages, compensatory and consequential, including damages for emotional distress, pain and suffering, and interest (pre-and post-judgment interest) pursuant to the above laws;

b.    Enter judgment in favor of the Plaintiff and against Defendants for punitive damages pursuant to the above laws;

c.    Order Defendants to pay Plaintiff damages in the amount equal to the value of all back pay, front pay and the value of any benefits she would ordinarily have been entitled to;

d.    Enter judgment and grant relief declaring that the actions of the Defendants described herein have violated the New Jersey Conscientious Employee Protection Act;

e.    Impose civil penalties against Defendants, pursuant to the New Jersey Conscientious Employee Protection Act.;

f.    Award reasonable attorney's fees, expert witness fees, and all related litigation costs to the Plaintiffs pursuant to the above laws; and

g.    Grant such other relief as may be just and proper.

**PATRICK J. WHALEN, ESQ.**

Dated:  December 15, 2021        By:    _s/Patrick J. Whalen, Esquire_

27

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues raised herein.

**PATRICK J. WHALEN, ESQ.**

Dated:  December 15, 2021          By:          *s/Patrick J. Whalen, Esquire*
                                                                 Attorney for Plaintiff

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

This matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**PATRICK J. WHALEN, ESQ.**

Dated:  December 15, 2021          By:          *s/Patrick J. Whalen, Esquire*
                                                                 Attorney for Plaintiff